## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**NJN SYSTEMS, INC.,**

                **Plaintiff,**

**v.**                                                      **Case No:   6:13-cv-1657-Orl-31KRS**

**SUNOCO, INC.,**

                **Defendant.**

_____

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 53), Plaintiff's Response in Opposition (Doc. 58), and the Defendant's Reply in Support of Summary Judgment (Doc. 59). A hearing on the Motion was held on February 9, 2015. (*See* Doc. 66).

### I.        Background

This is a predatory pricing case. Plaintiff, NJN Systems, Inc. ("NJN"), is an independent retailer of Sunoco brand gasoline products, operating at a facility located on US Highway A1A in Daytona Beach, Florida. Defendant, Sunoco, Inc. ("Sunoco"),[1] supplies gasoline to Plaintiff and also operates its own retail gas stations throughout the greater Daytona Beach area, including two nearby stations on A1A.

Plaintiff claims that Sunoco has violated the Florida Motor Fuel Marketing Practices Act ("FMFMPA"), § 526.301 *et seq.*, Florida Statutes (2014), by selling gasoline at its retail stations

---

[1] Defendant notes that the Plaintiff has not correctly named the Defendant company in this lawsuit, designating it as "Sunoco, Inc." while it should be Sunoco, Inc. (R&M), however the misdesignation is not a basis for the Motion for Summary Judgment, nor does it impact the present analysis. (*See* Docs. 8, 53).

below cost. Plaintiff also asserts that this conduct violates the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") § 501.201 *et seq.*, Florida Statues (2014).

Sunoco admits that it has sold gasoline at retail below cost, but claims that it has done so under the "meeting competition" exception to the statute. Furthermore, with respect to the instances in which gasoline was sold below competitor price, Sunoco contends these sales were isolated or inadvertent, and therefore exempt.

## II.     Facts

For purposes of Summary Judgment, Defendant concedes that the elements of a FMFMPA case have been met. Accordingly, the Court assumes as undisputed fact that Sunoco sold motor fuel at a retail outlet below cost between October 1, 2012 and October 31, 2013, from corporate stores[2] in close proximity to Plaintiff. (*See* Doc. 53 at 5); *see also* § 526.304 Fla. Stat. (setting forth elements for violation of FMFMPA by fuel seller).

Sunoco has submitted extensive and undisputed pricing records to show that on all but three occasions, the two subject Sunoco stations were matching competitor's pricing within the greater Daytona Beach area, including the beach west to the Daytona International Speedway and including the towns of Holly Hill, Port Orange, Daytona Beach, Daytona Shores, and Ormond Beach. (Doc. 53 at 3). Sunoco also concedes that on three occasions during this timeframe it sold gasoline below cost and below that of any competitor in the area.

## III.     Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving

---

[2] The corporate Sunoco stations at issue are designated with store numbers 2736 and 2738.

party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

## IV.    Analysis

### A.  Florida Motor Fuel Marketing Practices Act Claim

In Florida, fuel sales below cost or in a discriminatory fashion that damage competition violate the FMFMPA.[3] However, the FMFMPA provides two express statutory exceptions to this rule. Accordingly, fuel sales below cost are not prohibited when they meet one of the following conditions:

> (2)(a) An isolated, inadvertent incident involving activity prohibited pursuant to subsection (1) or subsection (3) shall not be a violation of this act.
>
> (b) A refiner's sale below refiner cost or a nonrefiner's sale below nonrefiner cost made in good faith to meet an equally low retail price of a competitor selling motor fuel of like grade in the same relevant geographic market which can be used in the

---

[3] In *Racetrac Petroleum, Inc. v. Delco Oil, Inc.*, 721 So. 2d 376, 377 (Fla. Dist. Ct. App. 1998) the court held that proof of injury to one competitor may suffice to constitute damage to "competition" within the meaning of the statute.

same motor vehicle, or of the same or similar items in combination with motor fuel of like grade which can be used in the same motor vehicle, is not a violation of this act.

§ 526.304(2) Fla. Stat. These affirmative defenses are mirrored in the price discrimination provision and are hereinafter referred to as the "meeting competition defense" and the "isolated and inadvertent defense." *See* § 526.305(3, 5) Fla. Stat.

Defendant argues that its undisputed pricing information demonstrates that, for the entire duration of the alleged violations, the stores were almost always meeting competition within the relevant geographic market, the greater Daytona Beach area, and thus meets the competition matching defense. Additionally, for the three instances of sales that were below all competitors' pricing, Sunoco argues that those constitute isolated and inadvertent activities, and therefore meet the isolated and inadvertent defense.

## 1. Isolated and Inadvertent

First, it is undisputed that there were three instances not covered by the meeting competition defense. Thus, for Defendant to succeed on summary judgment, these three instances must meet the isolated and inadvertent defense. The statute does not define "isolated" thus, the Court turns to the dictionary definition of the term. While the term can mean "happened just once" as Plaintiff suggests, that is not its only definition, nor is it a definition that makes sense in this context. A second definition for the "isolated" is "sporadic." Isolated Definition, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/isolated (last visited February 20, 2015). This definition entails that isolated events may happen more than once, but not constantly or regularly.

With regard to the FMFMPA, the Florida legislature found that healthy competition in fuel pricing benefits consumers in the state. Notably, it singled out for prohibition "*marketing practices which impair such competition . . . .*" §526.302 Fla. Stat. (emphasis added). "Marketing" constitutes organized sales efforts, which suggests that the legislature was concerned with patterns of fuel sale

activities which were anti-competitive, not occasional and randomized below-cost sales that were not part of a larger, organized effort. Understanding "isolated" to mean "sporadic" thus aligns with the legislative intent in passing the FMFMPA.

Defendant submitted the affidavit of Kevin Anderson, a Pricing Analyst in Sunoco's Pricing Department which is supported by extensive market pricing data, that demonstrated Sunoco did not try to price below competitors and that instances of below-competition pricing were inadvertent. (*See* Doc. 53-8). The affidavit, which was not disputed, showed Sunoco's marketing to be designed to meet competition, not to be a "market leader." (Id. ¶¶ 3-10).[4] This uncontested account shows that the three instances of below-cost, below-competition sales over the course of thirteen months were not part of a larger pattern, were sporadic, and therefore exempt from application of the statute.

### 2.  Meeting Competition Defense

The only real point of contention regarding the meeting competition defense is whether the relevant geographic area includes the peninsular region of Daytona Beach only, as Plaintiff contends, or if it includes both the peninsula and mainland portion as Defendant contends. The FMFMPA defines relevant geographic market as "the geographic area of effective competition." § 526.303(12) Fla. Stat. Further, " 'Competition' means the vying for motor fuel sales between any two sellers in the same relevant geographic market." § 526.303(2) Fla. Stat. In analyzing the relevant market within a given geographic area under federal anti-trust law, the Eleventh Circuit has observed that "[t]he relevant market is the 'area of effective competition' in which competitors generally are

---

[4] Mr. Nader Neshwat's, NJN's principal, submitted an affidavit in opposition to summary judgment. Rather than offering facts that counter Mr. Anderson's affidavit, Mr. Neshwat's submission largely states legal conclusions surrounded by lay opinion on the relevant market area. No other evidence has been submitted which indicates that the below-cost, below-competition sales were part of an organized effort on the part of Sunoco. Accordingly, Mr. Anderson's assertions remain unchallenged.

willing to compete for the consumer potential, and not the market area of a single company." *Am. Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1581 (11th Cir. 1985) (addressing claim under Sherman Act). Further, the Supreme Court has observed, "although the geographic market in some instances may encompass the entire Nation, under other circumstances *it may be as small as a single metropolitan area.*" *Brown Shoe Co. v. United States*, 370 U.S. 294, 337 (1962) (emphasis added).

Sunoco's Area Operations Manager for the Daytona Beach area submitted an affidavit asserting that residents and tourists drive throughout the roughly ten square mile area designated as the relevant geographic market. (Doc. 53-7 ¶ 7). Further, the Plaintiff's Affidavit does not contradict that there is daily traffic exchange between the mainland and the peninsular portions of Daytona Beach, but instead supports the notion that the mainland and the beach are part of the same relevant geographic market by noting that consumers can drive between the two via a bridge. (Doc. 58 at 11 (stating summarily that the beach stations do not compete with the mainland stations but noting drivers can go between the areas by bridge, though with traffic difficulties)).

The Defendant's definition of the relevant geographic market being the greater Daytona Beach area plainly makes sense for purposes of the retail gasoline market serving drivers who travel many miles before refueling. Plaintiff's suggestion of a beach-based micro market of a few miles of beach highway is simply untenable and is not supported by the evidence.[5] Further, the Defendant's

---

[5] Showing of a relevant geographic market typically requires expert opinion. *See Am. Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1579 (11th Cir. 1985) (noting that expert opinion is required to establish that relevant geographic market for key duplication consisted of enclosed regional shopping malls over 500,000 square feet of leasable area with at least to major anchor tenants in Sherman Anti-Trust Act case); *Astro Tel, Inc. v. Verizon Florida, LLC*, 979 F. Supp. 2d 1284, 1293 (M.D. Fla. 2013) (noting that expert testimony was required for relevant geographic market for complex telecommunications networks in Sherman Anti-Trust Act case). However, in this instance a market area smaller than Defendant suggests is untenable given the product— arguably there may be a larger relevant geographic market, but not smaller. There is no alternate theory of the relevant geographic market that could save the Plaintiff's claim from the competition matching defense because a larger market would include the competitor pricing relied upon by

undisputed pricing exhibits demonstrate that it engaged in such pricing in order to meet competition and was not motivated by predatory intent. Accordingly, the pricing was made in good faith. *See, e.g., Home Oil Co., Inc. v. Sam's East, Inc.*, 252 F. Supp. 2d 1302, 1312 (M.D. Ala. 2003) (examining similarly worded defense in Alabama Motor Fuel Marketing Act and noting that good faith element is met when fuel price was set with contemporaneous knowledge of other station's pricing).

Sunoco was meeting the prices of competitors within the relevant geographic market in good faith, therefore the pricing on these occasions did not violate the act. § 526.304(2)(b), Fla. Stat.; § 526.305(3), Fla. Stat.

### B. Florida Deceptive and Unfair Practices Act

The Florida legislature included a safety provision within FDUTPA that exempts all actions which are specifically permitted by federal or state law. *See* § 501.212(1) Fla. Stat. Because the complained of activity is falls within the ambit of the FMFMPA defenses, it cannot be a violation of FDUTPA.

It is therefore

**ORDERED,** the Defendant's Motion for Summary Judgment (Doc. 53) is **GRANTED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 5, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

_____

Defendant.